# UNITED STATES OF AMERICA
## MERIT SYSTEMS PROTECTION BOARD

| | |
|---|---|
| BRADFERD C. BIDNICK, | DOCKET NUMBER |
| Appellant, | AT-0752-14-0060-I-1 |
| v. | |
| DEPARTMENT OF JUSTICE, | DATE: April 15, 2015 |
| Agency. | |

## THIS FINAL ORDER IS NONPRECEDENTIAL[1]

Joseph E. Benitez, Coral Gables, Florida, for the appellant.

Aditi Sehgal and Katherine Meng, Washington, D.C., for the agency.

### BEFORE

Susan Tsui Grundmann, Chairman
Mark A. Robbins, Member

### FINAL ORDER

¶1 The appellant has filed a petition for review of the initial decision, which sustained his removal for misconduct. Generally, we grant petitions such as this one only when: the initial decision contains erroneous findings of material fact; the initial decision is based on an erroneous interpretation of statute or regulation or the erroneous application of the law to the facts of the case; the judge's rulings

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

during either the course of the appeal or the initial decision were not consistent with required procedures or involved an abuse of discretion, and the resulting error affected the outcome of the case; or new and material evidence or legal argument is available that, despite the petitioner's due diligence, was not available when the record closed. *See* Title 5 of the Code of Federal Regulations, section 1201.115 (5 C.F.R. § 1201.115). After fully considering the filings in this appeal, and based on the following points and authorities, we conclude that the petitioner has not established any basis under section 1201.115 for granting the petition for review. Therefore, we DENY the petition for review and AFFIRM the initial decision, which is now the Board's final decision. 5 C.F.R. § 1201.113(b).

¶2        On September 18, 2013, the agency appointed the appellant to the position of GL-09 Criminal Investigator.[2] Initial Appeal File (IAF), Tab 6, Subtab 4c at 56. Upon his appointment, the appellant was enrolled in special agent training. *Id.* at 58. As an enrollee, he was subject to the agency's Special Agent Trainee Honor Code (Honor Code). IAF, Tab 5 at 62, 66-67.

¶3        While the appellant was still in the training program, the agency proposed his removal based on one charge of violating the Honor Code by cheating on a written examination.[3] *Id*. at 56-59. Specifically, the agency alleged that on March 26, 2013, the appellant was observed viewing another trainee's examination materials and marking his own answer sheet after viewing those

---

[2] The appellant was previously a GS-13 Physical Security Specialist with the same agency and transferred to the Criminal Investigator position without a break in service. Initial Appeal File (IAF), Tab 6, Subtab 4c at 56. It is undisputed that he was an "employee" under 5 U.S.C. § 7511(a)(1)(A)(ii) with Board appeal rights at the time of his removal. IAF, Tab 5 at 5.

[3] The Honor Code states that "special agent trainees, in performance of their official duties, will not lie, cheat, steal or tolerate those who do. **Any violation of the Honor Code may result in termination from training.**" IAF, Tab 5 at 66 (emphasis in the original). The Honor Code provides a definition of "cheating," and the appellant does not dispute that his alleged actions, if proven, would constitute cheating under that definition. *Id*.

materials. *Id*. at 56. After receiving the appellant's response to the proposal, IAF, Tab 6, Subtab 4c at 4-55, the agency removed him effective September 4, 2013, IAF, Tab 5 at 22-28.

¶4    The appellant filed a Board appeal and requested a hearing. IAF, Tab 1 at 22-23. He disputed the charge and the penalty, and he raised affirmative defenses of harmful procedural error, violation of due process, and whistleblower reprisal.[4] IAF, Tab 20 at 1-6. After a hearing, the administrative judge issued an initial decision affirming the removal and finding that the appellant failed to prove his affirmative defenses. IAF, Tab 33, Initial Decision (ID).

¶5    The appellant has filed a petition for review, contesting the administrative judge's findings on the charge, the penalty, and his harmful error and due process affirmative defenses. Petition for Review (PFR) File, Tab 4. The agency has filed a response. PFR File, Tab 6.

The agency proved its charge by preponderant evidence.

¶6    Regarding the charge itself, the appellant argues that the agency's evidence was insufficient to prove that he copied the other trainee's work as alleged. PFR File, Tab 4 at 16-20, 28. Briefly, the agency's evidence in support of its charge was from three sources: (1) the observations of the Basic Training Programs Branch Chief, who sat in the front of the classroom during the examination, (2) the observations of the Staff Administrator, who sat in the back of the classroom during the examination, and (3) the appellant's and the other trainee's

---

[4] At the prehearing conference, the administrative judge declined to accept the appellant's whistleblower defense for adjudication because he failed to describe the nature of his two disclosures, and the timing of one disclosure was such that it could not have been a contributing factor in the removal. IAF, Tab 20 at 6-7. The appellant objected to the administrative judge's ruling and belatedly filed further evidence and argument on the issue. IAF, Tab 27 at 5-7, Tab 29 at 11-13. The administrative judge noted that the appellant's submission was untimely, but she nevertheless adjudicated the whistleblower defense and found that, assuming the appellant made a protected disclosure, it was not a contributing factor in his removal. IAF, Tab 33, Initial Decision at 16. The appellant does not challenge the administrative judge's finding regarding this claim, and we discern no reason to disturb it.

multiple choice answer sheets, which showed some similarities to one another. IAF, Tab 5 at 75, Tab 6, Subtabs 4f-4g; Hearing Transcript, Volume I (HT I) at 77 (testimony of the Staff Administrator), 129 (testimony of the Branch Chief). Specifically, the Branch Chief testified that, during the course of the 20- to 25-minute examination, he observed the appellant put his right elbow on his desk, lean his head into his hand, and glance to the left at another trainee's test materials approximately twenty times. HT I at 138-41. He further testified that, on two occasions, he saw the appellant look at the other trainee's materials and immediately mark his own answer sheet. *Id*. at 141-42. The Staff Administrator testified that she observed the appellant rest his elbow on his desk, his head in his hand, and glance three or four times to his left at the other trainee's examination materials. *Id*. at 83-89. As for the answer sheets, out of fifty questions, the appellant and the other trainee answered the same three incorrectly. IAF, Tab 5 at 75; HT I at 90 (testimony of the Staff Administrator). Of those three, the appellant and the other trainee supplied the same incorrect answer for two of them. IAF, Tab 5 at 75, Tab 6, Subtabs 4f-4g. There were fifteen trainees taking the examination that day, IAF, Tab 1 at 75; HT I at 114 (testimony of the Staff Administrator), and the examination took place in what could be fairly characterized as a typical classroom setting, with three rows of eight desks and chairs, IAF, Tab 6, Subtab 4c at 134, 136, Tab 14 at 94-100. The appellant sat in the front row. IAF, Tab 6, Subtab 4c at 134; HT I at 22 (testimony of the appellant), 135 (testimony of the Branch Chief).

¶7      The appellant testified that he took an unusual posture during the examination in order to relieve pain from a leg injury—not to look at the other trainee's answer sheet. PFR File, Tab 4 at 28; HT I at 29-32, 42-43 (testimony of the appellant). The administrative judge did not find the appellant's testimony persuasive for two reasons. First, she found that the appellant's injury was not severe enough to cause him to be unable to sit still during a 20-minute

examination. ID at 7. Second, she found that the appellant failed to raise this issue in response to the notice of proposed removal. ID at 7-8.

¶8  On review, the appellant argues that the administrative judge's opinion of the severity of his injury was not grounded in reliable, objective medical evidence. PFR File, Tab 4 at 28. He argues that the administrative judge denied his request to call his doctor as a witness and that he did not object because the administrative judge advised him that she would allow him to submit a letter from his doctor in lieu of testimony. *Id*.; IAF, Tab 19, Witness List at 2, Tab 20 at 8, Tab 29 at 16; HT I at 4-5 (statement of the administrative judge). He further argues that he would have objected to this witness ruling had he known that the administrative judge would be so dismissive of the evidence proffered in lieu of the doctor's testimony. PFR File, Tab 4 at 28.

¶9  As an initial matter, we find that the appellant did not avail himself of the administrative judge's invitation to submit a note from his doctor reflecting what the doctor's testimony would have been. Rather, he relied on medical evidence that was already in the record and showed generally that the appellant was experiencing discomfort from his injury, but did not specifically address the appellant's ability to sit still during the examination at issue. IAF, Tab 17, Subtabs F, R, S, Tab 29 at 16-17, 20. In fact, the only medical evidence about the injury's effect on the appellant's ability to sit is a December 2, 2013 doctor's note stating that "[t]he patient is sitting comfortably in the examination room . . . ." IAF, Tab 17, Subtab S at 4. Furthermore, we agree with the administrative judge that the appellant's failure to raise this important issue with the deciding official casts doubt on the veracity of his claim. ID at 7-8. While the Board will consider an appellant's evidence and arguments regardless of whether he raised them before the agency, *see Morgan v. U.S. Postal Service*, 48 M.S.P.R. 607, 610-11 (1991) (rejecting the notion that the Board's scope of review is limited to consideration of the administrative record established before the agency); *Stewart v. Office of Personnel Management*, 8 M.S.P.R. 289, 293 (1981) (concluding that

the Board is both authorized and mandated to consider de novo all available relevant evidence), the Board may find them less credible when he raises them for the first time before the Board, *see, e.g.*, *Reynolds v. Department of Justice*, 63 M.S.P.R. 189, 195 (1994).  For these reasons, we find no basis to disturb the administrative judge's denial of the appellant's doctor as a witness or her finding that the appellant's injury did not cause him to have to turn during the examination.

¶10     The appellant also argues that the Branch Chief and the Staff Administrator did not give credible testimony of what they observed during the examination. Regarding the Branch Chief, the appellant argues that he has "credibility and integrity issues," as evidenced by his past disciplinary record, including discipline for failure to report an "incident" to his supervisor in 1998 and for misuse of a government computer in 2002 or 2003.  PFR File, Tab 4 at 18, 29. The appellant's attorney attempted to question the Branch Chief about these matters at the hearing, but the administrative judge sustained the agency's objection to that line of questioning.  *Id*. at 29; HT I at 165-66.  The appellant argues that the administrative judge should have allowed testimony on these issues.  PFR File, Tab 4 at 29.

¶11     However, not all misconduct that an individual might commit has a bearing on his propensity for telling the truth.  *Cf. Eichner v. U.S. Postal Service*, 83 M.S.P.R. 202, ¶ 10 (1999) (because the appellant's prior misconduct of disrupting operations, distracting employees, and disobeying orders did not involve his propensity for telling the truth, the administrative judge should not have considered it in determining the credibility of the appellant's testimony).  It is not apparent to us, and the appellant has not alleged, that the Branch Chief's prior misconduct, which occurred approximately 10 to 15 years before the hearing, involved any sort of falsification or element of deception.  Under these circumstances, we find that the administrative judge did not abuse her discretion in sustaining the agency's objection to this line of questioning.  *See Sanders v.*

*Social Security Administration*, [114 M.S.P.R. 487](#), ¶ 10 (2010) (an administrative judge has wide discretion to control the proceedings, including the authority to exclude testimony that she believes would be irrelevant, immaterial, or unduly repetitious); [5 C.F.R. § 1201.41](#)(b)(3).  Moreover, the appellant has not explained on petition for review what testimony he expected to elicit from the Branch Chief concerning that prior misconduct.  Therefore, he has not shown that the administrative judge's ruling prejudiced his substantive rights.  *See Walton v. Tennessee Valley Authority*, [48 M.S.P.R. 462](#), 467 (1991); *Karapinka v. Department of Energy*, [6 M.S.P.R. 124](#), 127 (1981) (an administrative judge's procedural error is of no legal consequence unless it is shown to have adversely affected a party's substantive rights).

¶12        The appellant further argues that the Branch Chief's testimony was not persuasive because he could not recall where the appellant's and the other trainee's test booklets were positioned on the desk or in which hand they held their pencils.  PFR File, Tab 4 at 19; HT I at 190, 195 (testimony of the Branch Chief).  In addition, the Branch Chief did not observe what the appellant was marking on his answer sheet.  PFR File, Tab 4 at 19; HT I at 141 (testimony of the Branch Chief).  We have considered these matters in evaluating the overall evidence regarding the charge, but we do not find it surprising that the Branch Chief was either unable to observe or unable to remember these details.  We find that his failure to do so does not detract significantly from the persuasiveness of his testimony.

¶13        Regarding the Staff Administrator, the appellant argues that her own testimony shows that she did not see him cheat.  PFR File, Tab 4 at 16, 29.  In support of his argument, he cites the Staff Administrator's hearing testimony as well as her contemporaneous written account of her observations.  *Id*. at 16-17; IAF, Tab 5 at 73; HT I at 72-99.  It appears that the appellant's point is that the Staff Administrator did not see him mark his answer sheet after looking at the other trainee's papers.  PFR File, Tab 4 at 16-17.  We agree with this assessment

and we have considered it as part of our overall evaluation of the evidence. However, we think that it is an overstatement to say that the Staff Administrator testified that she did not see the appellant cheat. Although the Staff Administrator may not have observed the appellant mark his answer sheet after looking at the other trainee's papers, she did observe the appellant looking at the other trainee's papers, and this led her to believe that the appellant was cheating. HT I at 86-89 (testimony of the Staff Administrator); IAF, Tab 5 at 73.

¶14 The appellant further argues that the Branch Chief's testimony and contemporaneous written statement contradict those of the Staff Administrator. PFR File, Tab 4 at 8, 19. Specifically, the Branch Chief stated that he saw the appellant cheat by looking at the other trainee's answer sheet and marking his own, whereas the Staff Administrator stated that she did not see the appellant mark his answer sheet and did not see him cheat. *Id*.; IAF, Tab 5 at 71, 73; HT I at 99 (testimony of the Staff Administrator), 153-54 (testimony of the Branch Chief). Again, the appellant mischaracterizes the Staff Administrator's testimony. The Staff Administrator stated that she believed that she observed the appellant cheating, HT I at 86-89 (testimony of the Staff Administrator); IAF, Tab 5 at 73, and we do not think that her failure to observe him marking his answer sheet equates to a nonobservance of cheating. In any event, we find that the statements of these two witnesses are not contradictory. Rather, they are consistent with one another. The Branch Chief merely observed details that the Staff Administrator did not, which is understandable, considering that he had a better vantage point to observe the appellant's behavior during the examination, being seated closer to and facing him.

¶15 The appellant also argues that some of the language that the Branch Chief and Staff Administrator used in their testimony and written statements undercuts the conclusion that the appellant cheated on the examination. Specifically, he argues that the Branch Chief and the Staff Administrator stated that they observed the appellant "glance" at the other trainee's paper and that a mere glance is not a

violation of the agency's cheating policy. PFR File, Tab 4 at 15, 18; IAF, Tab 5 at 73; HT I at 84, 86 (testimony of the Staff Administrator), 138-41, 154, 157 (testimony of the Branch Chief). He further argues that the Branch Chief and the Staff Administrator stated that the appellant "appeared" to be cheating, which is not the language that someone would use if he were convinced of what he saw. PFR File, Tab 4 at 19-20; IAF, Tab 5 at 73; HT I at 88 (testimony of the Staff Administrator). We are not persuaded by the appellant's argument. Although a "glance" at another trainee's materials may not be the same thing as cheating, twenty such "glances" during the course of a 20- or 25-minute examination is strongly indicative of cheating. As for the use of the word "appears," we do not find this to be particularly significant.

¶16    Finally, the appellant notes that, for one of the questions that he and the other trainee missed, they supplied different answers. PFR File, Tab 4 at 19; IAF, Tab 5 at 75, Tab 6, Subtabs 4f-4g. We acknowledge that the appellant and the other trainee did not answer every question identically, and we have considered this fact in evaluating the evidence overall. They did, however, answer 49 of the 50 questions identically, and the one that they did not answer identically, they both got wrong. Although the similarities between the answer sheets alone might not have been enough to prove that the appellant cheated, for the reasons explained in the initial decision, we agree with the administrative judge that the totality of the evidence, including the answer sheets and the testimony and contemporaneous written accounts of the Branch Chief and the Staff Administrator, were sufficient to show by preponderant evidence that the appellant cheated on the examination, thereby violating the Honor Code. ID at 5-8.

The removal penalty promotes the efficiency of the service.

¶17    Where, as here, the agency's charge is sustained, the Board will modify an agency-imposed penalty only when it finds that the deciding official failed to weigh the relevant penalty factors, or the penalty imposed exceeds the tolerable

limits of reasonableness. *Jacoby v. U.S. Postal Service*, 85 M.S.P.R. 554, ¶ 15 (2000); *Douglas v. Veterans Administration*, 5 M.S.P.R. 280, 306 (1981). Among the factors that the Board will consider are the nature and seriousness of the offense, and its relation to the employee's duties, position, and responsibilities, the clarity with which the employee was on notice of any rules that were violated in committing the offense, or had been warned about the conduct in question, the employee's potential for rehabilitation, and other mitigating circumstances that may have been present and contributed to the misconduct. *Douglas*, 5 M.S.P.R. at 305-06. The appellant challenges the penalty determination as follows.

¶18      First, he argues that he was not on sufficient notice of what the agency's Honor Code requires because the agency "compelled [his] signature through direct orders." PFR File, Tab 4 at 8, 26. He argues that the manner in which the agency secured his signature to the Honor Code was improper, he was never asked whether he had any questions about it, and he "should have been properly informed with sufficient opportunity . . . to have read understood and exercised [his] freedom of choice to be bound by such regulation."[5] *Id*. at 9-13 (punctuation as in the original). We find, however, that the appellant was put on fair notice of the Honor Code and its requirements. On his first day of training, the appellant received a copy of the Honor Code, was told to read it, and had it explained to him. HT I at 17-18 (testimony of the appellant), 55 (testimony of the Program Manager). The agency also includes, as the first page of every written examination, a statement reminding special agent trainees of the Honor Code and its prohibition on cheating. *Id*. at 56-57 (testimony of the Program

---

[5] The appellant contends that if the Board were to uphold the agency's use of its Honor Code, this would have far reaching implications across the civil service. PFR File, Tab 1 at 14. He urges the Board to issue a Federal Register notice affording the Office of Personnel Management (OPM) and any interested persons an opportunity to brief the issue before the Board renders a decision. *Id*. at 13-14. We disagree that our findings on this issue represent a shift in the law or otherwise have the potential for broad impact on the civil service, and we decline the appellant's suggestion to call for amicus briefs or to seek an advisory opinion from OPM.

Administrator); IAF, Tab 5 at 69, 94-99. The appellant received and signed this statement on each of the seven examinations that he took, including the examination in question. IAF, Tab 5 at 69, 95-99; HT I at 55-56 (testimony of the Program Manager). Furthermore, we have reviewed the Honor Code, and we find nothing confusing about it. IAF, Tab 5 at 66-67. Nor has the appellant explained what exactly about the Honor Code he finds unclear. In any event, even in the absence of a cheating prohibition spelled out in the Honor Code, the appellant has a graduate level education and we do not believe that he fails to understand the gravity of cheating on an examination. IAF, Tab 17, Subtab D. Moreover, cheating on an examination is contrary to 5 C.F.R. § 735.203, which applies to the civil service generally, and provides that an employee shall not engage in criminal, infamous, dishonest, immoral, or notoriously disgraceful conduct, or other conduct prejudicial to the Government. *Lawley v. Department of the Treasury*, 84 M.S.P.R. 253, ¶ 18 (1999).

¶19     Second, the appellant argues that the deciding official failed to consider his injury as a mitigating factor. PFR File, Tab 4 at 27. However, the appellant has not established a causal connection between his injury and the misconduct that would give us a basis to consider this as a mitigating factor. *See Brown v. U.S. Postal Service*, 64 M.S.P.R. 425, 434 (1994).

¶20     Third, the appellant argues that the deciding official failed to consider his potential for rehabilitation. PFR File, Tab 4 at 27. We agree with the appellant that the deciding official testified that he did not consider the appellant's potential for rehabilitation. HT I at 296-97. It appears that the deciding official found that the appellant's potential for rehabilitation was not especially relevant because, throughout his entire career, the offense would be subject to disclosure under *Giglio v. United States*, 405 U.S. 150 (1972). HT I at 296-97. Nevertheless, the deciding official also testified that he considered the evidence that the appellant identified as indicative of his rehabilitative potential, including his work history and letters of reference. Hearing Transcript, Volume II (HT II)

at 26-27. The overall tenor of the deciding official's testimony is that he found the appellant's rehabilitative potential to be immaterial in light of the seriousness of the charge and the appellant's compromised utility as a law enforcement officer. HT I at 296-97; HT II at 26-27. Therefore, notwithstanding the portions of the deciding official's testimony that the appellant identifies on petition for review, our review of the deciding official's testimony as a whole leads us to agree with the administrative judge that the deciding official considered and responsibly weighed the pertinent penalty factors. ID at 9-10.

¶21    Regarding the nature and seriousness of the offense and its relation to the appellant's duties, position, and responsibilities, the Board has long held that offenses touching on honesty and integrity are especially serious when it comes to law enforcement officers, who are held to a higher standard of conduct to begin with. *E.g., Phillips v. Department of the Interior*, 95 M.S.P.R. 21, ¶ 16 (2003), *aff'd*, 131 F. App'x 709 (Fed. Cir. 2005); *Childs v. U.S. Postal Service*, 67 M.S.P.R. 348, 356 (1995); *Austin v. Department of Justice*, 11 M.S.P.R. 255, 259 (1982). The Board places primary importance on this penalty factor. *Jones v. Department of the Interior*, 97 M.S.P.R. 282, ¶ 13 (2004). For the reasons explained in the initial decision, we agree with the administrative judge that the removal penalty does not exceed the tolerable limits of reasonableness, and that it promotes the efficiency of the service. ID at 10.

The appellant has not shown that the agency committed harmful procedural error.

¶22    To prove that the agency committed harmful procedural error under 5 U.S.C. § 7701(c)(2)(A), the appellant must show both that the agency committed procedural error and that the error was harmful. *Parker v. Defense Logistics Agency*, 1 M.S.P.R. 505, 513 (1980). He must prove that any procedural errors by the agency prejudiced his substantive rights by possibly affecting the agency's decision; harmful error cannot be presumed. *Stephen v. Department of the Air Force*, 47 M.S.P.R. 672, 681 (1991).

¶23     The appellant argues that the agency failed to launch an adequate and competent investigation by the Office of Internal Affairs "pursuant to standing Agency policy, directives and manual orders" and that this resulted in the removal decision being based on "speculation and conjecture." PFR File, Tab 4 at 1. The administrative judge addressed this argument at length below, and he found that the agency committed no procedural error and that the appellant failed to show that the investigation that he desired might have changed the outcome of the case. ID at 12-14. There is no apparent error in the administrative judge's analysis and we find that the appellant's argument constitutes mere disagreement with it. *See Weaver v. Department of the Navy*, 2 M.S.P.R. 129, 133-34 (1980) (mere disagreement with the administrative judge's findings and credibility determinations does not warrant full review of the record by the Board).

¶24     The appellant also argues that the agency had no procedures to deal with allegations of cheating but instead, in violation of Bureau of Alcohol, Tobacco, Firearms and Explosives Manual Order 2140.1, created an ad hoc procedure to address his particular situation. PFR File, Tab 4 at 21; IAF, Tab 17, Subtab W. However, we are aware of no law, rule, or regulation, requiring agencies to have a separate established protocol for addressing every conceivable category of misconduct. Nor has the appellant explained what these alleged ad hoc procedures were or how they were inconsistent with the procedures in Manual Order 2140.1 or any other statutory or regulatory procedures generally applicable to addressing employee misconduct. Therefore, the appellant has not shown that the agency committed any procedural error in this regard or that any such procedural error was harmful. *See Helms v. Department of the Army*, 114 M.S.P.R. 447, ¶ 7 (2010).

The appellant has not shown that the agency violated his due process rights.

¶25     An agency's failure to provide a tenured public employee with an opportunity to present a response, either in person or in writing, to an appealable agency action that deprives him of his property right in his employment

constitutes an abridgement of his constitutional right to minimum due process of law, i.e., prior notice and an opportunity to respond. *Cleveland Board of Education v. Loudermill*, 470 U.S. 532, 546 (1985).

¶26    On review, the appellant argues that the deciding official was aware of the appellant's case before it came to him in his capacity as deciding official and that he was already predisposed to decide against the appellant. PFR File, Tab 4 at 22. However, it is well-established that a deciding official's awareness of background information concerning the appellant, his concurrence in the desirably to take an adverse action, or his predisposition to impose a severe penalty does not disqualify him from serving as a deciding official on due process grounds. *Martinez v. Department of Veterans Affairs*, 119 M.S.P.R. 37, ¶¶ 7-8 (2012). There is no general proscription of the appointment as a deciding official of a person who is familiar with the facts of the case and who has expressed a predisposition contrary to the appellant's interests. *Svejda v. Department of the Interior*, 7 M.S.P.R. 108, 111 (1981).

¶27    The appellant also argues that the deciding official considered "facts not in evidence" in reaching his decision. PFR File, Tab 4 at 23-25, 30. We have reviewed the appellant's argument and it appears that he is not alleging that the deciding official considered any ex parte communications or evidence to which the appellant was not privy. Rather, he disagrees with the deciding official's characterization of that evidence at the hearing. *Id*. at 23-25. We find that the appellant has not established a violation of his due process rights.

## NOTICE TO THE APPELLANT REGARDING
## YOUR FURTHER REVIEW RIGHTS

You have the right to request review of this final decision by the United States Court of Appeals for the Federal Circuit.

The court must receive your request for review no later than 60 calendar days after the date of this order. *See* 5 U.S.C. § 7703(b)(1)(A) (as rev. eff. Dec. 27, 2012). If you choose to file, be very careful to file on time. The court has

held that normally it does not have the authority to waive this statutory deadline and that filings that do not comply with the deadline must be dismissed. *See Pinat v. Office of Personnel Management*, 931 F.2d 1544 (Fed. Cir. 1991).

If you want to request review of the Board's decision concerning your claims of prohibited personnel practices under 5 U.S.C. § 2302(b)(8), (b)(9)(A)(i), (b)(9)(B), (b)(9)(C), or (b)(9)(D), but you do not want to challenge the Board's disposition of any other claims of prohibited personnel practices, you may request review of this final decision by the United States Court of Appeals for the Federal Circuit or any court of appeals of competent jurisdiction. The court of appeals must receive your petition for review within 60 days after the date of this order. *See* 5 U.S.C. § 7703(b)(1)(B) (as rev. eff. Dec. 27, 2012). If you choose to file, be very careful to file on time. You may choose to request review of the Board's decision in the United States Court of Appeals for the Federal Circuit or any other court of appeals of competent jurisdiction, but not both. Once you choose to seek review in one court of appeals, you may be precluded from seeking review in any other court.

If you need further information about your right to appeal this decision to court, you should refer to the federal law that gives you this right. It is found in Title 5 of the United States Code, section 7703 (5 U.S.C. § 7703) (as rev. eff. Dec. 27, 2012). You may read this law as well as other sections of the United States Code, at our website, http://www.mspb.gov/appeals/uscode/htm. Additional information about the United States Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov. Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, and 11. Additional information about other courts of appeals can be found at their respective websites, which can be accessed through http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

If you are interested in securing pro bono representation for an appeal to the United States Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for a list of attorneys who have expressed interest in providing pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit. The Merit Systems Protection Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.


FOR THE BOARD:                    _____
                                  William D. Spencer
                                  Clerk of the Board

Washington, D.C.